UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JILL A.R. CADIGAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:19-cv-11462-ADB |
| ALIGN TECHNOLOGY, INC. and | * | |
| LANCE JOHNSON, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

On April 25, 2019, Plaintiff Jill Cadigan ("Plaintiff") filed a complaint in Plymouth County Superior Court alleging that Align Technology, Inc. ("Align") and her supervisor, Lance Johnson ("Johnson" and, collectively, "Defendants") discriminated against her on the basis of gender and age (Counts I and II), retaliated against her and subjected her to a retaliatory work environment (Counts III and VI), and subjected her to a hostile work environment on the basis of her gender and age (Counts IV and V). [ECF No. 16 ("Amended Complaint" or "Am. Compl.") ¶¶ 96–143]. On July 3, 2019, Align removed the case to federal court. [ECF No. 1].

Presently before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint. [ECF No. 17]. For the reasons set forth below, the motion to dismiss, [ECF No. 17], is DENIED.

I.      BACKGROUND

A.      Factual Allegations

The following facts are drawn from the first amended complaint, [Am. Compl.], the well-pleaded allegations of which are taken as true for the purpose of evaluating the motion, see Ruvio v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Align is a "global medical device company" that is headquartered in Santa Clara, California. [Am. Compl. ¶ 5]. Plaintiff was hired by Align as a "Territory Manager" in January 2000. [Id. ¶ 6]. Johnson was Plaintiff's direct manager between November 2007 and January 2015. [Id. ¶ 8]. Johnson "made disparaging statements about Plaintiff being a working mother, [including] questioning whether it was even appropriate for her to work at all, and even asking a colleague: 'Doesn't her husband work?'" [Id. ¶ 10]. For example, Johnson "expressed incredulity" when Plaintiff told him that "she was involved in her children's school activities and other domestic activities consistent with the traditional role of married women," [id. ¶ 11], and "disparaged Plaintiff" for not socializing with her coworkers "because she did not like to play golf or stay out after hours and drink," [id. ¶ 12].

In January 2014, Johnson "placed [Plaintiff] on a performance plan when her performance was objectively similar and even superior to that of [male employees] not placed on plans." [Id. ¶ 27]. Plaintiff, believing that the tactic was motivated by a desire to force out female employees who were over the age of forty, [id. ¶ 28], contacted Align's Director of Human Resources (the "HR Director") to initiate an internal discrimination charge and to challenge the performance plan, [id. ¶¶ 41, 42]. The HR Director assured Plaintiff that Align's policy required that her charge be kept confidential and that any reprisals or retaliation for her making the charge would violate Align's policy and the law. [Id. ¶¶ 42–43]. Plaintiff told the

HR Director that "she was concerned [Johnson] had unfairly evaluated her work in comparison to [male] team members" out of a desire to get rid of her.  [Id. ¶ 46].  The HR Director said that Johnson maintained that she was "at the bottom of every performance 'metric,'" but allowed Plaintiff to provide data to show that Johnson's assertions were false.  [Id. ¶ 47].

In January 2014, Plaintiff prepared a twelve-page letter (the "Internal Complaint") citing numerous statistics measuring her performance against similarly situated territory managers, which she believed established that Johnson had unfairly evaluated her work, [id. ¶ 48], and supported her contention that she was receiving disparate treatment because she was the only female employee in her sales region, [ECF No. 16-1 at 6].  The Internal Complaint compared Plaintiff to two men on her team, Jim Fasino ("Fasino") and Michael Anistasi ("Anistasi"), among others.  [Id.; Am. Compl. ¶ 49].  On January 12, 2014, Plaintiff emailed the Internal Complaint to both the HR Director and Align's Executive Team.  [Am. Compl. ¶ 50].

On January 17, 2014, at Align's annual sales meeting in Boca Raton, Florida, "Plaintiff told [the HR Director] that she believed that [Johnson's] mistreatment of her was fueled by gender-based and age-based animus," citing previous examples of Johnson's discrimination.  [Id. ¶ 51].  Plaintiff told the HR Director that "Johnson's hostility toward her intensified when she turned [forty-nine]."  [Id. ¶ 52].  Align's CEO joined the conversation and informed Plaintiff that he had read the Internal Complaint, but "could not comment on it . . . [and] hoped it would be rectified . . . ."  [Id.].  The CEO further stated to Plaintiff, "You've been an important part of this company for a long time," and, "I hope we can all put this behind us."  [Id.].  The HR Director "promised to investigate [the] charges" and reiterated that it "would remain confidential . . . ."  [Id. ¶ 53].

Three weeks later, when Plaintiff asked Johnson about her performance plan, he said, "that little report you wrote made that go away." [Am. Compl. ¶ 54]. In addition to knowing about the Internal Complaint, Johnson also disclosed it to Anistasi, one of the male coworkers whom Plaintiff had referenced as a comparison, [id. ¶¶ 49, 79], and encouraged Anistasi to treat Plaintiff poorly, [id. ¶¶ 75, 76, 79]. In May 2014, Anistasi "began expressing hostility toward [Plaintiff]," [id. ¶ 55], including failing to return her phone calls for several weeks and shunning her at both a business dinner and a company meeting, despite Plaintiff's repeated attempts to determine why he was upset with her, [id. ¶¶ 56–57]. In August 2014, Anistasi told Plaintiff, "I was a loyal friend to you, you are all out for yourself, and I can't share why I am upset, because someone will get fired. So I won't discuss it with you." [Id. ¶ 57]. He also told her to "[t]hink about what [she] did." [Id. ¶ 59]. Plaintiff asked another employee, Fasino, if he knew why Anistasi was upset. [Id. ¶ 60]. Fasino said that, though he knew, he "could not tell her because revealing [that information] would subject another employee to discipline." [Id.]. Fasino told Plaintiff that he was not upset with her and encouraged her "to work out the problem with [Anistasi]." [Id.].

When Plaintiff once again tried to address the issue with Anistasi, he made disparaging comments about her work and told her that the rest of the sales team had discussed the issue and agreed that her work was inadequate. [Am. Compl. ¶¶ 61–63]. He then told Plaintiff to apologize to the team, which she did. [Id. ¶ 63]. When she called to apologize, her fellow team members "expressed puzzlement . . . ." [Id.]. Additionally, Anistasi claimed that some of the doctors with whom Plaintiff worked did not like her and talked about her behind her back. [Id. ¶ 64 (claiming that Anistasi told Plaintiff, "[e]ven people you think like you don't," "[y]ou'd be shocked to find out who doesn't like you," and, "[t]hey . . . are people with whom you consider

yourself to have good relationships")].  Anistasi also falsely asserted that a customer hated Plaintiff, and sarcastically thanked her for her performance.  [Id. ¶¶ 66–67].

In 2015, Johnson assigned Plaintiff and Anistasi a joint project, knowing that the assignment "would subject Plaintiff to extreme hostility from [Anistasi]."  [Am. Compl. ¶ 77]. When Plaintiff requested that she be reassigned, Johnson declined.  [Id.].  Johnson repeatedly asked Plaintiff if she was aware of why Anistasi would refuse to work with her and was incredulous when she said that she did not.  [Id. ¶ 78].  Anistasi continued to refuse to work with Plaintiff and insisted that they complete their assignment separately.  [Id.].

In May 2016, Anistasi told Plaintiff that "she was good at her job, [but] she was a 'horrible person.'"  [Am. Compl. ¶¶ 68–69].  Apparently referring to the Internal Complaint, Anistasi claimed that Plaintiff "wrote a report that threw [him] under the bus.  Trying to save [her] own job, [she] put down everybody else!"  [Id. ¶ 69].  Plaintiff told Anistasi that he should not have been aware of the Internal Complaint and asked if Johnson had disclosed it.  [Id. ¶ 70]. Anistasi refused to answer.  [Id.].  When Plaintiff explained that she had only talked about Anistasi's performance as a comparison to her own to demonstrate harassment, Anistasi claimed that she should have made the HR Director pull the statistics rather than "throwing all [of her] colleagues under the bus."  [Id. ¶ 71].  Anistasi said that, because of the Internal Complaint, he could never trust Plaintiff and would never be her friend.  [Id.].  He continued to treat her with hostility.  [Id. ¶ 73].

Eventually, Johnson was replaced as Plaintiff's manager by Jeff Melville ("Melville"). [Am. Compl. ¶ 73].  Melville told Plaintiff that he would instruct Anistasi to stop his conduct, and "that bullying was not permitted for any reason."  [Id. ¶ 74].  In June 2016, Anistasi sent Plaintiff a text message apologizing for his behavior.  [Id.].

In September 2016, Plaintiff was once again put on a performance plan, this time by Align's Northeast Director of Sales, [Am. Compl. ¶ 80], because she had allegedly failed "to complete record keeping related templates in a sales-based software system," [id. ¶ 81].  Plaintiff had in fact "completed her recordkeeping responsibilities."  [Id. ¶ 83].  Further, Plaintiff claims that the Director knew that "similarly situated employees had also not complied with the record keeping activities, and that within the company, compliance with the task was considered at most a minor, administrative responsibility" for which "non-compliance could not result in discipline."  [Id. ¶ 82].  Plaintiff claims that she was put on the plan due to Align's ongoing animus toward female employees over the age of forty and in retaliation for her earlier Internal Complaint.  [Id. ¶ 83].  Melville apologized for having to put Plaintiff on a performance plan, "emphasiz[ing] that he had not made the decision . . . [and] had no choice in the matter."  [Id. ¶ 84].

Plaintiff alleges that her experience was not isolated, but that Johnson and other senior male managers "promoted, participated in, and condoned a spring break-like corporate culture of drunkenness and 'womanizing'" and regularly had sexual relationships with female employees. [Am. Compl. ¶ 13]; see also [id. ¶ 25 (stating that one manager had sexual relationships with three employees under his supervision and another manager had sexual relationships with two employees)].  At social events, including Align's National Sales Meeting and Summer meeting, "senior male managers regularly drank excessively" and made sexual overtures toward female employees . . . ."  [Id. ¶ 15].  At a 2016 Sales Meeting, the Director of Northeast sales spanked a female employee.  [Id. ¶ 19].  When another employee questioned the Director about the incident, the Director shrugged off the conduct and told the employee he had spanked to "have another drink."  [Id. ¶ 20].  Additionally, supervisors compared the name of a female employee

to a slang term for genitalia.  [Id. ¶ 22].  Though the incidents were reported, nothing came of the reports.  [Id. ¶¶ 21, 22].  Further, identifying information about employees who cooperated in making the reports was disclosed during the investigation, such that other employees criticized those who had cooperated.  [Id. ¶¶ 22, 23].

On January 17, 2017, "Plaintiff experienced stress and anxiety so severe, that upon the advice of her medical providers, she was forced to take a leave of absence . . . ."  [Am. Compl. ¶ 90].  She never returned to Align.  [Id.].  Plaintiff initiated an administrative investigation of the allegations that form the basis of her action, [id. ¶ 91], and learned that Align had similarly discriminated against other women over the age of forty, some of whom had previously filed internal discrimination complaints with the company's HR department and had left the company after allegedly agreeing to keep the terms of their departures confidential, [id. ¶¶ 29–39].

The administrative investigation terminated on November 15, 2018.  [Am. Compl. ¶ 91]. At the administrative stage, "Align submitted a statement, signed under oath by the [HR Director]," which claimed that the HR Director had investigated Plaintiff's Internal Complaint, had "met with" Plaintiff "and explained that she was unable to find any evidence of discrimination," and Plaintiff "said she understood and everyone moved on."  [Id. ¶ 85]. Plaintiff maintains that the meeting never took place and that the HR Director never told her that there was no evidence of discrimination.  [Id. ¶ 86].

On May 5, 2019, at 10:50 a.m., Anistasi sent Plaintiff a text message, stating:

Hi Jill.  You'll probably think this text is strange and coming out of the blue .. [sic] and it probably is.  I just wanted to let u know that I'm sorry for the way I handled our disagreement before, it was very harsh and close minded.  Hope all is well with u and family.  And Just in case u are wondering; no I'm not drunk and I did not get hit in the head by a large object!  Take care.

[Am. Compl. ¶ 92; ECF No. 16-2 at 2–3].  Fasino also disclosed to Plaintiff that Anistasi claimed that Johnson had only told him about Plaintiff's complaint so that he would retaliate against her. [Am. Compl. ¶ 94].

### B.      Procedural History

Plaintiff brought this action in Plymouth County Superior Court on April 25, 2019.  [ECF No. 1-1; ECF No. 16 at 33].  Align removed the case to federal court on July 3, 2019.  [ECF No. 1].  Plaintiff filed her Amended Complaint on September 3, 2019, [Am. Compl.], which alleges that Align discriminated on the basis of gender and age (Counts I and II respectively), and that Align and Johnson retaliated against her (Count III) and created a hostile work environment based on gender, age and in retaliation for Plaintiff's complaints (Counts IV, V and VI respectively).  [Id. ¶¶ 96–143].

Defendants moved to dismiss the Amended Complaint on September 17, 2019, claiming that Plaintiff's claims are time-barred and that she otherwise has failed to state a claim because she does not allege an adverse employment action or that she was subjected to severe or pervasive harassment.  [ECF Nos. 17, 18].  Plaintiff opposed, [ECF No. 19], and Defendants filed a reply, [ECF No. 23].

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material

element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation marks omitted).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  When reviewing a motion to dismiss, the Court may consider documents outside of the pleadings, "'the authenticity of which are not disputed by the parties,' making narrow exceptions to the general rule 'for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'"  Álvarez-Maurás v. Banco Popular of P.R., 919 F.3d 617, 622–23 (1st Cir. 2019) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

III.    DISCUSSION

Defendants argue that Plaintiff's claims are time-barred and that, even if this action were timely, she has failed to allege facts sufficient to demonstrate that she experienced an adverse employment action or was subjected to severe and pervasive harassment.  See generally [ECF No. 18].

A.    Timeliness

Defendants first argue that Plaintiff's claims are time-barred because some of the allegedly discriminatory conduct took place more than three years before the complaint was filed.  [ECF No. 18 at 7–14].  Plaintiff's claims arise under Massachusetts General Laws Chapter 151B, which provides that a civil action must be filed "not later than three years after the alleged

unlawful practice occurred . . . ."  Mass. Gen. Laws ch. 151B, § 9.  Defendants argue that

Plaintiff's complaint is therefore untimely.  [ECF No. 18 at 7].  Plaintiff maintains that any

untimely allegations are anchored by timely instances of discrimination, because Defendants'

actions constitute a continuing violation of anti-discrimination laws.  [ECF No. 20 at 11].

"Under Massachusetts law, the continuing violation doctrine serves as an exception to the

statute of limitations only if three prerequisites are satisfied."  Shervin v. Partners Healthcare

Sys., Inc., 804 F.3d 23, 34 (1st Cir. 2015).  First, "the claim must be 'anchored' by . . . [an]

incident of discrimination or retaliation [which] transpir[ed] within the limitations period";

second, the claim must arise from "a series of related events that have to be viewed in their

totality in order to assess adequately their discriminatory nature and impact"; and, "[t]hird, the

plaintiff must show that a reasonable person in her circumstances would have refrained from

filing a complaint within the limitations period."  Id. at 34–35 (first citing Cuddyer v. Stop &

Shop Supermarket. Co., 750 N.E.2d 928, 936–38 (Mass. 2001); and then citing Noviello v. City

of Bos., 398 F.3d 76, 86 (1st Cir. 2005)).  "A plaintiff who seeks to derive the benefit of the

continuing violation doctrine bears the burden of establishing all three of its elements."  Id. at 34

(first citing Cuddyer, 750 N.E.2d at 941–42; and then citing Ocean Spray Crans., Inc. v. MCAD,

808 N.E.2d 257, 266–67 (Mass. 2004)).

1.     Anchoring Claim

Several of Plaintiff's allegations are timely and could serve as anchoring claims,

including Anistasi's hostility toward her and her being placed on a second performance plan.

"The anchoring conduct alone need not necessarily support her claim, but it must substantially

relate and contribute to the alleged course of discriminatory conduct."  Martin-Kirkland v.

United Parcel Serv., Inc., No. 03-4520H, 2006 WL 1110371, at *2 (Mass. Super. Ct. Apr. 11,

2006), <u>judgment entered,</u> No. 03-4520H, 2007 WL 1385616 (Mass. Super. Ct. Jan. 8, 2007), aff'd, 885 N.E.2d 175 (Mass. App. Ct. 2008) (citing Cuddyer, 750 N.E.2d at 938).  The Court must therefore determine whether those anchoring claims are sufficiently related to the underlying discrimination claim to constitute a continuing violation.

    2.  Series of Related Events

  Plaintiff maintains that "the illegal acts were interrelated throughout Plaintiff's employment, and part of a 'culture' of such illegal conduct . . . ."  [ECF No. 20 at 14].  In order for a later allegation to anchor a claim for purposes of the continuing violation doctrine, the anchoring claims must arise from "a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact."  Shervin, 804 F.3d at 34–35.  "This anchoring event must be 'substantially relate[d]' to earlier instances of discrimination or retaliation and must contribute to the continuation of the pattern of conduct that forms the basis of the claim."  Id. (quoting Cuddyer, 750 N.E.2d at 938); see also Morin v. Murida Furniture Co., No. 072441E, 2009 WL 6067021, at *5 (Mass. Super. Ct. Sept. 30, 2009) ("If the alleged anchoring event is not substantially related to the earlier incidents, then the plaintiff may not claim the benefit of the continuing violation doctrine.").

  Separate claims constitute a series of related events if, "when linked together, the seemingly disparate incidents . . . show a prolonged and compelling pattern of mistreatment that have forced a plaintiff to work under intolerable, sexually offensive, conditions."  Cuddyer, 750 N.E.2d at 937.  In determining whether a series of events are sufficiently related,

> [t]he trial court must simply address the question: 'Is the *subject matter* of the discriminatory acts sufficiently similar that there is a substantial relationship between the otherwise untimely acts and the timely acts?' And, then make the inquiry: 'Are the acts isolated and discrete or do they occur with *frequency* or repetitively or continuously?'

Brissette v. Franklin Cty., Sheriff's Office, 235 F. Supp. 2d 63, 86–87 (D. Mass. 2003) (quoting

O'Rourke v. City of Providence, 235 F.3d 713, 731 (1st Cir. 2001) (emphasis in original)).

Plaintiff alleges that Johnson purposefully told Anistasi about her Internal Complaint so

that he would retaliate against her. [ECF No. 20 at 8].  Anistasi's ongoing hostility towards her

therefore substantially relates to Johnson's underlying retaliatory actions, which were the basis

of Plaintiff's Internal Complaint.  See Heywood v. Buckley, No. SUCV201603146A, 2017 WL

1838466, at *4 (Mass. Super. Ct. Mar. 28, 2017) (finding that, at the motion to dismiss stage,

dismissal is not warranted where the plaintiff sufficiently alleges facts that, "when viewed in

their totality, might reasonably suggest that the continuing violation doctrine applies").

Additionally, Plaintiff claims that she was placed on a second performance plan as a continuation

of Align's pattern of ridding itself of females over the age of forty, [ECF No. 20 at 6], which

could reasonably be considered substantially related to the first allegedly discriminatory

performance plan imposed by Johnson, and to the alleged pattern of placing females over forty

on performance plans with discriminatory animus, see Heywood, 2017 WL 1838466, at *4.

### 3.   Reason for Not Filing Earlier

Under Massachusetts law,

> a plaintiff who demonstrates a pattern of sexual harassment that creates a hostile
> work environment and that includes conduct within the . . . statute of limitations,
> may claim the benefit of the continuing violation doctrine and seek damages for
> conduct that occurred outside the limitations period, unless the plaintiff knew or
> reasonably should have known that her work situation was pervasively hostile and
> unlikely to improve, and, thus, a reasonable person in her position would have filed
> a complaint with the MCAD before the statute ran on that conduct.

Cuddyer, 750 N.E.2d at 941–42.  Because the applicability of the continuing violation doctrine

"depends on what the plaintiff knew or should have known and when, the application of the

continuing violation doctrine to a particular case frequently presents an issue of fact to be

decided by the jury." Chaffee v. Dep't of Corr., No. 021908, 2006 WL 4114304, at \*6 (Mass. Super. Ct. Dec. 20, 2006) (citing Clifton v. Mass. Bay Transp. Auth., 815 N.E.2d 614, 622 (Mass. App. Ct. 2004), aff'd in part and rev'd in part on other grounds, 839 N.E.2d 314 (Mass. 2005)).

Plaintiff cites a number of reasons why she did not file her Complaint sooner. [ECF No. 20 at 13–14]. Whether or not these reasons establish that she knew or reasonably should have known that her work situation was unlikely to improve is a question of fact to be decided by a jury. See Vil v. PricewaterhouseCoopers LLP, No. 11-cv-10780, 2012 WL 3202852, at \*10 (D. Mass. Aug. 2, 2012) ("[P]laintiff's allegations regarding conduct prior to [the limitations period] may be actionable under chapter 151B in the event a jury could conclude that the delay in initiating the suit was reasonable."). Therefore, because Plaintiff has sufficiently alleged a continuing violation, the Amended Complaint is timely under Chapter 151B.

### B.      Gender and Age Discrimination (Counts I and II)

In the alternative, Defendants argue that, even if Plaintiff's claims are timely, her gender and age discrimination claims under Chapter 151B § 4(1), [Am. Compl. ¶¶ 96–116 (Counts I and II)], fail because she has not pled facts sufficient to establish that she experienced an adverse employment action. [ECF No. 18 at 14–17]. In order to plead a violation of Chapter 151B, § 4(1), Plaintiff must allege facts sufficient to demonstrate "(1) [that] she is a member of a protected class, (2) [that] she suffered from an adverse employment action, (3) discriminatory animus, and (4) a causal linkage between the discriminatory animus and the adverse employment action." Audette v. Town of Plymouth, 858 F.3d 13, 23 (1st Cir. 2017) (citing Lipchitz v. Raytheon Co., 751 N.E.2d 360, 368 (Mass. 2001)). At the pleading state, a complaint need not "lay[] out a fixed set of facts in support of [a plaintiff's] claims of discrimination," Posada v.

ACP Facility Servs., 389 F. Supp. 3d 149, 159 (D. Mass. 2019) (citing Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002)), nor "establish every element of the prima facie case," id. (citing Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 286 (1st Cir. 2014)).

First, Plaintiff alleges that she was discriminated against on the basis of her gender and age, both of which are protected classes under Chapter 151B.  See Mass. Gen. Laws ch. 151B, § 4(1) ("It shall be an unlawful practice: 1. For an employer. . . because of the . . . *gender identity* . . . of any individual . . . to discriminate against such individual . . . ." (emphasis added)); Mass. Gen. Laws ch. 151B, § 4(1B) ("It shall be an unlawful practice: . . . . For an employer in the private sector . . . because of the *age* of any individual . . . to discriminate against such individual . . ." (emphasis added)).  See, e.g., Bennett v. Saint-Gobain Corp., 453 F. Supp. 2d 314, 326 (D. Mass. 2006) ("It is unlawful under both federal and Massachusetts law for an employer to discharge an individual age 40 or older because of his age."); Lipchitz, 751 N.E.2d at 368 ("It was undisputed that [plaintiff] was a member of a protected class because she was a woman[.]").

Second, Plaintiff has alleged facts sufficient to support an adverse employment action because she "has alleged enough facts to state plausible claims for both hostile work environment and retaliation . . . ."  Posada, 389 F. Supp. 3d at 159; see also Noviello, 398 F.3d at 90–91 (finding that a retaliatory hostile work environment constitutes "an adverse employment action cognizable under chapter 151B, § 4(4)").  Because Plaintiff has effectively pled that she was retaliated against after filing her Internal Complaint, see discussion infra Section III.C., and was subjected to a hostile work environment, see discussion infra Section III.D., she has likewise sufficiently pled that she experienced an adverse employment action based on her gender and age.

Finally, with respect to discriminatory animus and causation, the "plaintiff must prove by a preponderance of the credible evidence that the defendant's discriminatory animus contributed significantly to [the adverse employment] action, that it was a material and important ingredient in causing it to happen . . . [though not necessarily] the only cause of that action." Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 84 (1st Cir. 2004) (quoting Lipchitz, 751 N.E.2d at 371 n.19 (internal citation omitted)). Plaintiff has alleged continuous hostility towards her by Johnson and others based on her gender, including alleging that Johnson made "disparaging statements about [her] being a working mother, questioning whether it was even appropriate for her to work at all," asking a colleague if her husband works and "disparag[ing] Plaintiff for not fraternizing with the almost all-male sales force . . . because she did not like to play golf or stay out after hours and drink." [Am. Compl. ¶¶ 8–12]. More generally, Plaintiff claims that her experience is just one example of the kind of retaliation and hostility faced by women over the age of forty in a workplace that discriminated against women by "promot[ing], participat[ing] in, and condon[ing] a spring break-like corporate culture of drunkenness and 'womanizing'" in which "senior male managers . . . openly made sexual overtures toward female employees. . . ." [Id. ¶¶ 13–20]. Further, Plaintiff asserts that the Defendants routinely retaliated against women over the age of forty in order to encourage them to resign and named ten female employees who "were over the age of 50 when they were forced out of work" and "replaced by males or females under the age of 30." [Id. ¶¶ 27–40]. Thus, Plaintiff has sufficiently alleged facts to support her claim that Defendants' animus against older women was "a material and important ingredient in causing" her adverse employment action. See Cariglia, 363 F.3d at 84.

"A work environment pervaded by harassment or abuse" that causes "intimidation, humiliation, and stigmatization" constitutes employment discrimination under Chapter 151B,

which encompasses a "broad sweep of . . . conduct . . . ."  College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 508 N.E.2d 587, 591 (Mass. 1987).  Here, Plaintiff has adequately alleged both gender and age-based discrimination under the "broad sweep" of the conduct covered by Chapter 151B.  See id.  "Further facts in support of her claims of discrimination may be developed later through discovery."  Posada, 389 F. Supp. 3d at 159.

### C.    Retaliation and Retaliatory Hostile Work Environment (Counts III and VI)

Plaintiff alleges that Defendants violated Chapter 151B by retaliating against her (Count III), [Am. Compl. ¶¶ 117–28], and subjecting her to a retaliatory hostile work environment (Count VI), [id. ¶¶ 139–43].  Chapter 151B provides that it is unlawful "[f]or any person [or] employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under" Chapter 151B, § 4(4), "or [f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by" Chapter 151B, § 4(4A).  Bennett, 453 F. Supp. 2d at 331 (quoting Mass. Gen. Laws ch. 151B, §§ 4(4), 4(4A)) (internal quotation marks omitted).  Defendants argue that Plaintiff's claims of retaliation and retaliatory hostile work environment fail because she has not alleged that she experienced an adverse employment action.  [ECF No. 18 at 14–16].

"[I]n order to establish a prima facie case of retaliation under [the] Massachusetts anti-discrimination statute, [a plaintiff] 'must show that (1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse job action.'"  Fantini v. Salem State Coll., 557 F.3d 22, 35 (1st Cir. 2009) (quoting Thompson v. Coca-Cola Co., 522 F.3d 168, 181 (1st Cir. 2008)).  At the pleading stage, the burden "is not intended to be onerous and the plaintiff need not establish every element

of the prima facie case. . . ."  Posada, 389 F. Supp. 3d at 157–58 (citing Sullivan v. Liberty Mut.
Ins. Co., 825 N.E.2d 522, 530 (Mass. 2005)).

### 1.    Engagement in Protected Activity

"Pursuant to Mass. Gen. Laws ch. 151B, § 4(4), [a plaintiff] engages in a protected
activity 'if she has opposed any practices forbidden under this chapter or . . . has filed a
complaint, testified or assisted in any proceeding under [Mass. Gen. Laws ch. 151B, § 5].'"
Fantini, 557 F.3d at 36 (quoting Mass. Gen. Laws ch. 151B, § 4(4)).  "Protected conduct may
include filing a formal complaint of sexual harassment, 'complaining to management or filing an
internal complaint of harassment, or meeting with co-workers to discuss how to stop sexual
harassment in the workplace.'"  Youngblood v. City of Bos. Pub. Sch., No. SUCV201500309C,
2016 WL 7189833, at *6 (Mass. Super. Ct. Oct. 31, 2016) (quoting Ritchie v. Dept. of State
Police, 805 N.E.2d 54, 62 (Mass. App. Ct. 2004)).  Here, Plaintiff clearly engaged in protected
conduct in 2014 when she utilized Align's internal discrimination reporting procedure to file her
Internal Complaint.  [Am. Compl. ¶¶ 41–53].

### 2.    Adverse Employment Action

Defendants argue that the Amended Complaint "does not allege any adverse employment
action that materially affected Plaintiff's employment relationship, such as a demotion, reduction
in pay, or termination of employment . . . ."  [ECF No. 18 at 15].  Plaintiff responds that the
adverse actions that resulted from her internal discrimination charge included: Johnson
disparaging Plaintiff for having complained to Align's HR Director; Johnson revealing
Plaintiff's Internal Complaint to Anistasi; Anistasi and Johnson subjecting Plaintiff to hostile
actions and a hostile environment; the HR Director failing to keep Plaintiff's Internal Complaint
confidential; Johnson, the HR Director, and other Align staff failing to take adequate steps to

prevent Johnson and Anistasi from subjecting Plaintiff to reprisals on the basis of a confidential

matter; the Northeast Director of Sales giving Plaintiff a poor review without justification; and

cumulative illegal conduct that resulted in her constructive discharge.  [Am. Compl. ¶¶ 54, 90,

121, 123, 125, 126, 128].

"[A] claim of retaliation under G.L. c. 151B, § 4(4) or (4A) . . . is satisfied merely by a

showing that some detrimental action occurred in response to the employees' assertion of

protected rights."  King v. City of Bos., 883 N.E.2d 316, 327 n.11 (Mass. App. Ct. 2008) (citing

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 58, 63–64 (2006)).  An adverse

employment action must result in "real harm, as opposed to [Plaintiff's] subjective feelings of

disappointment and disillusionment."  MacCormack v. Bos. Edison Co., 672 N.E.2d 1, 9 (Mass.

1996).  "An employment action is adverse if it would have dissuaded a reasonable worker from

engaging in protected activity, such as making a charge of discrimination."  Posada, 389 F. Supp.

3d at 158 (citing Rodriguez-Vives, 743 F.3d at 284–85).  Examples of adverse employment

actions include "assign[ment] of disparate work from similarly situated co-workers" and

"subject[ion] . . . to a hostile work environment . . . ."  Id. (first citing Rodriguez-Vives, 743 F.3d

at 285–86; and then citing Noviello, 398 F.3d at 89–91).  A plaintiff does not have to allege "to

have been fired, demoted, lost wages or salary, been denied benefits or transferred" to establish

that she experienced a "material disadvantage"; rather, an employee is retaliated against "when

objective aspects of the work environment are affected."  Youngblood, 2016 WL 7189833, at *6.

"[U]nder Massachusetts law as under Title VII, subjecting an employee to a hostile work

environment in retaliation for protected activity constitutes an adverse employment action (and,

thus, triggers the statutory prophylaxis)."  Noviello, 398 F.3d at 91.  "[W]orkplace harassment, if

sufficiently severe or pervasive, may in and of itself constitute an adverse employment action

sufficient to satisfy the second prong . . . ."  <u>Id.</u> at 89.  "[R]udeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim."  <u>Id.</u> at 92 (citing <u>Manatt v. Bank of Am.</u>, 339 F.3d 792, 803 (9th Cir. 2003)).  "[O]nly those actions, directed at a complainant, that stem from a retaliatory animus . . . may be factored into the hostile work environment calculus."  <u>Id.</u> at 93.

Determining the existence of an actionable hostile work environment "requires the trier of fact to assess the matter on a case-by-case basis, weighing the totality of the circumstances." <u>Id.</u> at 94 (citing <u>Lipsett v. Univ. of P.R.</u>, 864 F.2d 881, 898 & n.18 (1st Cir. 1988)).  "That a series of minor retaliatory actions may, when considered in the aggregate, satisfy the . . . prima facie 'adverse action' requirement, is settled law in this Circuit."  <u>Votolato v. Verizon New England, Inc.</u>, No. 16-cv-11663, 2018 WL 4696743, at *6 (D. Mass. Oct. 1, 2018) (emphasis omitted) (quoting <u>Alvarado v. Donahoe</u>, 687 F.3d 453, 458–59 (1st Cir. 2012)).

The allegations in the Amended Complaint, taken as true for purposes of considering the motion to dismiss, "would permit . . . a reasonable jury to find that the plaintiff was subjected to a retaliation-based hostile work environment."  <u>Noviello</u>, 398 F.3d at 93.  Plaintiff contends that Johnson illegally revealed her Internal Complaint to Anistasi so that Anistasi would retaliate against her.  [Am. Compl. ¶ 79].  As a result, Plaintiff alleges that Anistasi subjected her to years of harsh treatment, including refusing to work on a project together, [<u>id.</u> ¶ 78], not returning Plaintiff's phone calls, [<u>id.</u> ¶ 56], shunning Plaintiff at company events, [<u>id.</u>], causing Plaintiff humiliation by telling her to apologize to coworkers for incidents those coworkers did not think warranted apology, [<u>id.</u> ¶ 63], falsely telling Plaintiff that customers and coworkers did not like her, [<u>id.</u> ¶¶ 64–66], telling Plaintiff that she was a "horrible person," [<u>id.</u> ¶ 689], and chastising Plaintiff for filing her Internal Complaint, [<u>id.</u> ¶ 69].  Plaintiff has therefore alleged facts

sufficient to establish that she was subjected to a hostile work environment by the Defendants

arising out of retaliation for her Internal Complaint against Johnson.[1]

        3.      A Causal Link Between the Protected Activity and the Adverse Job Action

Retaliation requires a "but-for causal connection between the protected activity and the

adverse employment action." Posada, 389 F. Supp. 3d at 158 (citing Univ. of Tex. Sw. Med. Ctr.

v. Nassar, 570 U.S. 338, 362 (2013)).  While "mere temporal proximity . . . is usually not

enough," it is sufficient if "the plaintiff can also prove that the individual knew of the protected

conduct when he or she engaged in the adverse action." Id. (citing Pomales v. Celulares

Telefonica, Inc., 447 F.3d 79, 85 (1st Cir. 2006)).  Plaintiff contends that Johnson revealed the

contents of her Internal Complaint to Anistasi in hopes that Anistasi would retaliate against her.

[Am. Compl. ¶ 79].  The adverse actions referenced above were plausibly in response to the

Internal Complaint filed by Plaintiff, and therefore adequately allege but-for causation.

Plaintiff has stated a claim for retaliation and a retaliatory hostile work environment

because she has sufficiently pled that she engaged in a protected activity by filing the Internal

Complaint; that she suffered an adverse employment action in the hostile work environment

subsequently created by Johnson and Anistasi; and that that hostile work environment was

causally linked to the Internal Complaint.

---

[1] Though Plaintiff alleges facts that support her claim of constructive discharge, [Am. Compl. ¶¶ 97–116], the Court need not determine whether those allegations are alone sufficient to state a claim for retaliation based on constructive discharge, because Plaintiff has sufficiently alleged facts to support her claim that retaliation, retaliatory hostile work environment, and hostile work environment constituted "adverse action." See Johnson v. Amherst Nursing Home, Inc., No. 14-cv-30100, 2015 WL 4750932, at *8 (D. Mass. Aug. 11, 2015) (explaining that a "[p]laintiff is not required to establish a constructive discharge with regard to her retaliation claims . . . and the court will not decide whether the facts alleged rise to that level.")

D.      **Hostile Work Environment (Counts IV and V)**

In Counts IV and V, Plaintiff claims that the Defendants subjected her to a hostile work

environment on the bases of gender and age, respectively.  [Am. Compl. ¶¶ 129–138].

Defendants claim that Plaintiff has failed to allege that she was subjected to severe and pervasive

harassment that would constitute a hostile work environment.  [ECF No. 18 at 17–18].  Plaintiff

maintains that her claims, when viewed together, were "pervasive" and "unreasonably and

significantly interfered with her employment."  [ECF No. 20 at 19–20].

An "abusive or hostile work environment" violates the statutory prohibition on

discrimination of protected classes.  See Posada, 389 F. Supp. 3d at 157 (citing Valentin-

Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006)).  Assessment of

"whether a work environment is hostile requires a fact-specific analysis of the 'frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance.'"  Dexter v. Dealogic, LLC, 390 F. Supp. 3d 233, 243 (D. Mass. 2019) (quoting

Thompson, 522 F.3d at 180)).  For a plaintiff to plead a viable claim for a hostile work

environment, "[t]he alleged conduct must be 'sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment.'"  Allard v.

Citizens Bank, 608 F. Supp. 2d 160, 166 (D. Mass. 2009) (quoting Oncale v. Sundowner

Offshore Servs., Inc., 523 U.S. 75, 78 (1998)).  Though a single incident is generally insufficient

to establish that a work environment was hostile, one incident, if particularly egregious, may be

sufficient.  Posada, 389 F. Supp. 3d at 157.

There are two components to the hostile work environment inquiry: subjective and

objective.  Allard, 608 F. Supp. 2d at 166.  For the subjective component, "the plaintiff must

demonstrate that she actually perceived the environment to be hostile or abusive as a result of the defendant's conduct."  Id.  For the objective component, a plaintiff must demonstrate that the "alleged conduct was sufficiently severe or pervasive that a reasonable person would perceive the environment to be hostile or abusive."  Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993)).

With regard to the subjective component, Plaintiff has described in detail the distress she experienced as a result of what she felt was hostile and abusive behavior from the Defendants. The Amended Complaint includes the Internal Complaint she made to Align about Johnson's behavior, in which she made statements such as "[w]orking under unnecessary pressure has put me under duress and it's a terrible way to feel.  I have been bullied emotionally and . . . I have endured this for 2 to 3 years and am at my breaking point."  [ECF No. 16-1 at 13].  Plaintiff also wrote in the Internal Complaint that she "underst[oo]d the pressure that is inherent in [her] role [in sales]," but that "[t]he added and undue pressure . . . caused an added burden to [her] professionally and . . . spilled over into [her] personal life," including increased anxiety that disrupted her sleep patterns.  [Id. at 3].[2]

As to the objective component, "the plaintiff must show that the alleged conduct was sufficiently severe or pervasive that a reasonable person would perceive the environment to be hostile or abusive."  Allard, 608 F. Supp. 2d at 166.  "[T]aunting in relation to" an internal discrimination charge and "open and direct hostility clearly based on protected status" are evidence of hostile work environment and retaliatory harassment.  Noviello, 398 F. 3d at 93–94 (first citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 26 (1st Cir. 2002); and then citing Oncale,

---

[2] Because Plaintiff's claims are not time-barred, see discussion supra at Section III.A, the Court may consider all of the allegedly abusive and harassing behavior outlined by Plaintiff in the Amended Complaint, including those that occurred prior to 2016.

523 U.S. at 80).  In <u>Posada v. ACP Facility Services</u>, for example, the court found that the plaintiff had stated a plausible claim that the alleged conduct was objectively offensive because "a reasonable person would feel intimidated by threats of a co-worker and humiliated and demeaned by embarrassing comments made or disparate work assigned by a supervisor," especially when considering "the cumulative effect of that intimidation [and humiliation] . . . ." <u>Posada</u>, 389 F. Supp. 3d at 159.

Plaintiff has stated a plausible claim that a reasonable person would feel humiliated and demeaned by the facts alleged.  For example, in a 2014 performance review, Johnson wrote: "Your consistent inability to succeed over the last two years has kept your territory from growing at the level that is expected of you, thus impacting the success of your Territory, the New England Region, the Northeast Area and the entire company."  [ECF No. 16-1 at 2].  Yet, in her Internal Complaint, Plaintiff provided statistical data that directly contradicted Johnson's statements about her performance.  [<u>Id.</u> at 4–8].  Further, Plaintiff has alleged that Defendants made inappropriate statements about her being a working mother, made sexual advances on female employees, and forced women over the age of forty to resign by purposefully creating an unsupportive and hostile environment in order to replace them with men under the age of thirty. [Am. Compl. ¶¶ 8–40].

Viewing the allegations in the light most favorable to the Plaintiff, a reasonable person would perceive the environment created by Johnson to be humiliating, demeaning, and hostile, with the continuously hostile environment arising directly out of the protected action of filing her Internal Complaint.  The "cumulative effect" of the intimidation and humiliation, <u>Posada</u>, 389 F. Supp. 3d at 159, provide sufficient objective evidence of a hostile work environment.

Therefore, the Amended Complaint sufficiently states a claim of hostile work environment on the basis of Plaintiff's age and gender.

**IV.     CONCLUSION**

Accordingly, Defendants' motion to dismiss the Amended Complaint for Plaintiff's alleged failure to file her action within the statute of limitations and failure to plead facts sufficient to state a claim, [ECF No. 17], is <u>DENIED</u>.

      **SO ORDERED.**

July 7, 2020                                         /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE